UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LUZ R. | : |
| | : |
| v. | : C.A. No. 19-00307-WES |
| | : |
| ANDREW M. SAUL, Commissioner | : |
| Social Security Administration | : |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint May 31, 2019 seeking to reverse the Decision of the Commissioner. On November 4, 2019, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (ECF No. 11). On January 2, 2020, Defendant filed a Motion for an Order Affirming the Decision of the Commissioner. (ECF No. 13).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that Plaintiff's Motion to Reverse (ECF No. 11) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 13) be GRANTED.

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for DIB (Tr. 329-330) and SSI (Tr. 331-339) on November 24, 2015 alleging disability since June 28, 2013. The applications were denied initially on April 25,

2016 (Tr. 203-214, 215-226) and on reconsideration on August 17, 2016. (Tr. 229-239, 240-250). Plaintiff requested an Administrative Hearing. On July 31, 2017, a hearing was held before Administrative Law Judge Jason Mastrangelo (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. 178-202). Plaintiff amended her disability onset date to January 1, 2015. (Tr. 131). The ALJ issued an unfavorable decision to Plaintiff on August 25, 2017. (Tr. 125-147). The Appeals Council denied Plaintiff's request for review on April 10, 2019. (Tr. 1-4). Therefore, the ALJ's decision became final. A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in finding no severe physical impairments at Step 2.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's Step 2 findings are supported by substantial evidence and should be affirmed.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as

well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to

Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of HHS, 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of

disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of HHS, 816 F.2d 792, 794 (1st Cir. 1987).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to

enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.     Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual

functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

1. **Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

   2.   **Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

   V.   **APPLICATION AND ANALYSIS**

   A.   **The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ determined that Plaintiff's depression was a severe impairment but that none of her physical impairments met the severity standard. (Tr. 134-136). The ALJ assessed an RFC for work at all exertional levels but subject to non-exertional limitations related to Plaintiff's depression. (Tr. 138). At Step 4, the

ALJ concluded that Plaintiff's RFC did not allow her to perform her past relevant work as a secretary. (Tr. 141). However, at Step 5, the ALJ found Plaintiff to be not disabled because her RFC allowed her to perform other unskilled work at the medium and light exertional levels. (Tr. 142).

### B. Plaintiff Has Shown No Step 2 or RFC Error

Plaintiff argues that the ALJ erred at Step 2 in finding that she had no "severe" physical impairments. Plaintiff contends that the ALJ additionally erred by failing to account for any physical limitations in the RFC and concluding at Step 5 that Plaintiff could perform work at all exertional levels. In particular, Plaintiff challenges the ALJ's Step 2 evaluation of her knee osteoarthritis, carpal tunnel syndrome and fibromyalgia. Each of these arguments is considered below.

At Step 2, an impairment is considered "severe" when it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28. Although Step 2 is a de minimis standard, Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)), it is still a standard and a standard on which Plaintiff bears the burden of proof. See Desjardins v. Astrue, No. 09-2-B-W, 2009 WL 3152808 (D.Me. Sept. 28, 2009). In his Step 2 analysis, the ALJ thoroughly discussed Plaintiff's claimed physical impairments in the context of the record as a whole and concluded that there was insufficient medical evidence presented establishing that Plaintiff suffered any "severe" physical impairments. (Tr. 134-136).

An ALJ may properly base his Step 2 finding on the absence of medical evidence supporting a finding that a claimant suffers from a "severe medically determinable physical or mental impairment" which "significantly limits" her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). See also Teves v. Astrue, No. 08-246-B-W, 2009 WL 961231 (D.Me. April 7, 2009) ("[A] claimant's testimony about symptoms is insufficient to establish a severe impairment at Step 2 in the absence of medical evidence."). At Step 2, Plaintiff bore the burden of demonstrating that she had a "medically determinable" physical or mental impairment(s) that significantly limited her ability to do basic work activity at the relevant time. Id. The ALJ found that Plaintiff did not meet that burden as to her physical issues, and Plaintiff has shown no error in his findings.

The ALJ properly evaluated Plaintiff's knee impairment. (Tr. 135). The ALJ first acknowledged Plaintiff's allegations of knee pain (e.g., Tr. 442), but then reasonably concluded that knee x-rays and other testing failed to identify any significant knee abnormality. (Tr. 468). The ALJ also properly observed that Plaintiff's course of treatment did not support a severity finding at Step 2 and that she did not receive ongoing treatment for knee pain. (Tr. 135). For example, the ALJ considered December 2015 records that showed Plaintiff had good range of motion in the knees and no popliteal fullness or tenderness; there was also no effusion. (Tr. 135, citing Tr. 444). Plaintiff was simply advised to get x-rays (Tr. 444), which, again were generally unremarkable.

Other evidence of record further supports the ALJ's analysis. Although the ALJ acknowledged that Plaintiff presented with difficulty ambulating at her consultative examination (Tr. 140, 482), the ALJ also identified record evidence that showed that Plaintiff failed to "present[] with signs of impaired gait or motor dysfunction or imbalance to warrant the use of a

cane." (Tr. 135). For example, the ALJ appropriately considered August 2015 documentation of Plaintiff's normal gait and reflexes in the bilateral knees. (Tr. 135, 458). The ALJ properly considered evidence documenting Plaintiff's full strength and lack of muscle atrophy in December 2016. (Tr. 135, 516). Plaintiff also presented with a normal gait, normal reflexes and negative Romberg test at that time. (Tr. 135, 516-517). Furthermore, Plaintiff's dermatologist assessed Plaintiff's feet and legs in June 2017, finding no obvious joint deformities or reduced range of motion. (Tr. 140, 505). Plaintiff also acknowledged at the hearing that her daughter purchased a cane for her, and it was not prescribed by a medical professional. (Tr. 135, 174).

In addition to considering the aforementioned medical evidence, the ALJ noted the various activities that Plaintiff was able to complete, notwithstanding her non-severe impairments. (Tr. 139). Plaintiff could care for her personal needs, make the bed, socialize with family, attend medical appointments, grocery shop with assistance and travel to Florida to help care for her sister. (Tr. 139, 190, 200, 369-370). Therefore, the ALJ reasonably concluded that Plaintiff did not suffer from a severe knee impairment because the evidence failed to show the requisite effect on her ability to perform basic work activities.

Plaintiff specifically argues that the ALJ misconstrued the results of her 2016 knee x-ray by concluding it "showed no abnormality." (Tr. 135). The report "impression" is that there was "no <u>acute</u> abnormality demonstrated." (Tr. 468). (emphasis added). Plaintiff argues that she had a "chronic" knee abnormality, rather than an "acute" exacerbation, specifically stating, "the absence of an acute event or exacerbation may not reflect a continuing problem but the kind of chronic abnormality noted is consistent with the knee pain of which [she] complained." (ECF No. 11 at p. 11). Both this knee x-ray and Plaintiff's subjective complaints were reviewed by the

-13-

consulting physicians (Tr. 218, 232) and neither concluded that Plaintiff had any medically determinable knee impairment. (Tr. 219, 233).

Plaintiff next argues that the ALJ erroneously considered evidence related to her ankle injury in the context of the evaluation of her knee pain, pointing to a set of x-rays from April 2017. (ECF No. 11 at p. 11). However, the record fails to support this argument. As noted, the ALJ discussed Plaintiff's knee complaints and considered the January 2016 x-ray of the knees. (Tr. 135). Then, the ALJ discussed evidence related to the knees, such as range of motion testing. Id. After doing so, the ALJ began discussing Plaintiff's diagnosis of left Achilles tendonitis. Id. In doing so, the ALJ referenced x-rays of the ankle from 2017. Id. In other words, the ALJ's discussion of Plaintiff's ankles included consideration of her diagnosis, treatment and x-rays from 2017. Contrary to Plaintiff's contention, the ALJ's discussion of the ankle treatment was separate from the discussion of Plaintiff's knee treatment. Indeed, the ALJ only cited to the 2017 x-rays of the ankles after discussing Plaintiff's ankle treatment, that noted improvement upon taking Naproxen. Id. Plaintiff's contention that the ALJ somehow mistakenly conflated her knee and ankle x-rays is not supported by a plain reading of the ALJ's analysis.

Plaintiff also alleges that the ALJ erred in evaluating carpel tunnel syndrome ("CTS"). The ALJ acknowledged Plaintiff's February 2017 diagnosis of CTS, referencing the corresponding EMG results. (Tr. 135, 519-524). However, "a diagnosis alone does not support a finding that the impairment is severe." Evans v. Astrue, No. CA 11-146-S, 2012 WL 4482366, at *5 (D.R.I. Aug. 23, 2012), rep. & rec. adopted, 2012 WL 4482354 (D.R.I. Sept. 26, 2012).

Here, as the ALJ explained at Step 2, the evidence did not show that Plaintiff's CTS resulted in significant functional limitations despite the objective test results. (Tr. 135). Specifically, Plaintiff was using splints to manage symptoms, and, by the time of the ALJ's

decision, surgery had not been completed or even recommended. Id. Indeed, within just two months of the EMG testing, Plaintiff traveled to Florida to help care for her sick sister. (Tr. 135, 166-167). Moreover, in seeking follow-up treatment after having the EMG, Plaintiff's upper extremity motor examination was unremarkable – she had no pronator drift, she had no tremor and she had 5/5 strength. (Tr. 510).

The ALJ discussed Plaintiff's CTS later in the decision, again affirming that Plaintiff has had normal physical examination and radiological findings. (Tr. 140). Indeed, the ALJ emphasized that Plaintiff's EMG did not show any radiculopathy or nerve entrapment. (Tr. 140, 512). Moreover, the ALJ noted Plaintiff's CTS did not meet the durational requirement set forth in 20 C.F.R. §§ 404.1509, 416.909 – explaining that Plaintiff had not even alleged the impairment when filing for benefits. (Tr. 140). Accordingly, the ALJ reasonably concluded that Plaintiff had not proven that her CTS constituted a severe impairment within the relevant period.

Plaintiff's other challenges to the ALJ's CTS determination are also unpersuasive. First, Plaintiff emphasizes that a carpal tunnel release surgery was "contemplated" prior to the issuance of the ALJ's decision. (ECF No. 11 at p. 12). However, Plaintiff fails to explain how the contemplation of surgery undercuts the ALJ's Step 2 finding given that Plaintiff's surgical status was not the only reason the ALJ found CTS to be a non-severe impairment. Id. For example, the ALJ considered that Plaintiff used splints but that within two months of the EMG, she was able to travel independently on a plane to go visit her ailing sister. (Tr. 135, 166-167). The ALJ also considered evidence of Plaintiff's daily activities, which included, per her report, performing some household chores and some sewing. (Tr. 385, 388). In addition, as noted above, Plaintiff's objective testing was generally unremarkable prior to the EMG being performed. (Tr. 135, 510).

And, even when the EMG was done, it failed to show radiculopathy or nerve entrapment or any other functional limitations. (Tr. 140, 512).

Plaintiff points out that she had reported hand numbness as early as December 2015 to suggest that the ALJ erred by "[t]racing the existence of this condition only to the EMG confirmation," but this argument lacks merit. Again, the ALJ did not simply rely on the date of the EMG to find Plaintiff's CTS to be a non-severe impairment. The ALJ considered that the EMG results did not identify any radiculopathy or nerve impingement, nor was there evidence of reduced range of motion, atrophy or abnormal physical examination. (Tr. 140). Moreover, even acknowledging Plaintiff reported numbness in her hands in December 2015, Plaintiff did not even mention any hand symptoms when she applied for benefits just one month prior. (Tr. 140, 329-339, 356).

Next, Plaintiff contends that the fact that she later underwent a carpal tunnel release procedure cuts against the ALJ's Step 2 determination because "doctors would not perform superfluous surgeries." (ECF No. 11 at p. 12). However, as Plaintiff concedes, she underwent this surgery <u>after</u> the ALJ issued his decision in August 2017. Therefore, the ALJ clearly did not consider any surgery "superfluous" because there was not even a recommendation for surgery for the ALJ to consider. (Tr. 135). Notably, even the post-surgical notes submitted by Plaintiff fail to support her assertion since providers specifically stated that Plaintiff would be able to return to work, full-time within two to three months of the carpal tunnel release surgery. (Tr. 110-111).

Finally, Plaintiff takes issue with the ALJ's notation that her CTS was not "of a significant severity so as to prevent all work," suggesting the ALJ misunderstood the "standard for the severity stage" of the evaluation process. (ECF No. 11 at p. 12, citing Tr. 135). However, the ALJ clearly began his discussion at Step 2 by acknowledging Plaintiff's CTS and noting that "the

record [did] not support that [the] impairment[ ] cause[d] more than slight functional limitations that interfere[d] with the claimant's ability to perform basic work-related activities." (Tr. 134). Moreover, the ALJ's discussion of CTS went beyond the one sentence emphasized by Plaintiff. As discussed in detail above, the ALJ considered that Plaintiff had conservative treatment, was able to engage in substantial activities contemporaneously to having the condition confirmed, and that objective test results were generally unremarkable, to include a specific lack of any radiculopathy or nerve entrapment. (Tr. 140, 512). Accordingly, Plaintiff has not shown that the ALJ erred in finding her CTS to be a non-severe impairment.

Finally, Plaintiff challenges the ALJ's evaluation of her fibromyalgia at Step 2. The ALJ expressly considered Plaintiff's allegation of fibromyalgia, beginning such discussion with the acknowledgment of Plaintiff's diffuse pain and fatigue. (Tr. 135). The ALJ went on to consider all of the record evidence, in compliance with SSR 12-2p and reasonably concluded that Plaintiff's fibromyalgia was non-severe. (Tr. 135-136).

The ALJ acknowledged that there was a questionable diagnosis of fibromyalgia in December 2016, but even then, Plaintiff had full strength and no atrophy. (Tr. 135, 488, 489). Indeed, while Dr. Bretcher noted "many tender points" that were consistent with a previous fibromyalgia diagnosis, the number and location of the tender points were not included in his report. (Tr. 488-489). Therefore, the treatment note did not reflect the requisite findings under SSR 12-2p which expressly establishes the available criteria for a fibromyalgia diagnosis. See SSR 12-2p, 2012 WL 3104869, at *2-4 (identifying criteria to establish fibromyalgia as a medically determinable impairment).

As the ALJ noted, the subsequent diagnosis of fibromyalgia from March 2017 was on more specific grounds. (Tr. 135). Medical evidence documented sixteen out of eighteen tender points

based on examination of Plaintiff. (Tr. 135, 553). But, under 20 C.F.R. §§ 404.1509, 416.909, any impairment must have lasted or be expected to last for a continuous period of at least twelve months to satisfy the Act's durational requirement. Here, even considering the March 2017 diagnosis, Plaintiff's fibromyalgia was short of meeting this requirement at the issuance of the ALJ's decision in August 2017 (i.e., five months after the March 2017 diagnosis). (Tr. 135-136).

Furthermore, even accepting Plaintiff's complaints of diffuse pain and fatigue, the ALJ noted that Plaintiff's daughter purchased a cane for her, rather than having that cane being prescribed by a medical provider. (Tr. 135, 174). The ALJ also noted Plaintiff's gait was normal upon examination, and that there was evidence of full extremity strength. (Tr. 444, 488-489, 516). Indeed, Plaintiff herself reported improvement of her symptoms with Cymbalta and Gabapentin. (Tr. 529, 536). Therefore, the ALJ reasonably concluded that Plaintiff's fibromyalgia had not met the durational requirement, and, regardless, Plaintiff has not identified evidence of specific functional limitations necessary to support a finding of a severe impairment.

Next, Plaintiff maintains the ALJ erred because there was evidence of potential fibromyalgia prior to the March 2017 diagnosis. However, Plaintiff does no more than point to subjective complaints of hand pain, depression, migraines, fatigue, difficulty sleeping, constipation and cognitive impairment. (ECF No. 11 at pp. 12-13). However, simply listing symptoms does not provide the medical evidence necessary to establish fibromyalgia as a severe impairment under SSR 12-2p. Moreover, the ALJ identified depression as a severe impairment and assessed several nonexertional limitations, including restricting Plaintiff to carrying out only simple and routine tasks and instructions, maintaining only occasional interactions with coworkers and supervisors, and having no interaction whatsoever with the general public. (Tr. 134, 138). Therefore, even considering the fatigue and cognitive issues listed by Plaintiff, she fails to

undercut the RFC given that it limited both the type of work Plaintiff could perform and with whom she could perform such work. In short, Plaintiff simply has not demonstrated how the RFC fails to account for her symptoms, whether attributable to fibromyalgia, her severe depression or one of her non-severe impairments. Plaintiff has shown no Step 2 errors in this ALJ decision.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (ECF No. 11) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 13) be GRANTED. I further recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, In. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 3, 2020